**FEDERAL DEPOSIT INSURANCE CORP., In Its Corporate Capacity, Plaintiff–Appellee,**

v.

**CARDINAL OIL WELL SERVICING CO., INC., Jim Cardinal, Don H. Wilson and Paul Condit, Defendants–Appellants.**

No. 87–1164.

United States Court of Appeals, Fifth Circuit.

Feb. 25, 1988.

Dan Sullivan, Andrews, Tex., for Cardinal Oil Well, etc., Jim Cardinal & Don H. Wilson.

Rhonda G. Fellers, Lubbock, Tex., for Condit.

Harold H. Pigg, Ray Fargason, Brock, Morton, Fargason & Pigg, Lubbock, Tex., for F.D.I.C.

Before GOLDBERG, POLITZ, and DAVIS, Circuit Judges.

POLITZ, Circuit Judge:

The district court granted summary judgment in favor of the Federal Deposit Insurance Corporation (FDIC) against Cardinal Oil Well Servicing Company, Inc., based on a promissory note executed by the company. The court also granted the FDIC summary judgment against Jim Cardinal, Don H. Wilson, and Paul Condit, as guarantors of the note. Finding no genuine issue of material fact, and concluding that the FDIC is entitled to judgment as a matter of law,[1] we affirm.

*Background*

The material facts are neither involved nor disputed. In November 1981, Cardinal Oil had need of interim financing for the purchase of a piece of oil well servicing equipment. A loan of $470,000 was secured from First National Bank of Lea County, New Mexico, subsequently known as First City National Bank, Hobbs, New Mexico, and Moncor Bank, N.A., Hobbs, New Mexico (hereinafter "the bank"). The bank required that Cardinal, Wilson, Condit, and Sam Spikes, the four shareholders of Cardinal Oil, each personally guarantee the loan to their company. The loan was paid timely, and Cardinal Oil had no further direct dealings with the bank.

The guaranty agreements were broad in scope and continuing in nature. Each guarantor undertook to guarantee "abso-

lutely and unconditionally ... any and all existing and future indebtedness and liability of any kind, nature, and character ... from [Cardinal Oil] to the Bank, howsoever and whensoever created, or advised, or evidenced, or acquired." Each guaranty was "made and shall continue as to any and all such indebtedness and liability of [Cardinal Oil] to the Bank incurred or arising prior to receipt by the Bank of written notice of termination."

In January 1983 Spikes left the venture and Cardinal Oil purchased his stock, giving in payment a promissory note in the principal sum of $350,000, payable in 96 monthly installments of $5,688.50. Spikes promptly assigned this note to the bank as additional security for his personal debt. In August 1983 the bank purchased the note for $334,213.18 and notified Cardinal Oil of the transaction. Cardinal Oil acknowledged the transfer and paid the bank the monthly installments for the next six months.

In March 1984 Cardinal Oil defaulted. The following February the bank filed suit against Cardinal Oil and the four guarantors. The defendants counterclaimed for willful and malicious interference with their business relations with other financial institutions.

In August 1985 the bank was declared insolvent by the Comptroller of the Currency and the FDIC was appointed receiver. In its corporate capacity the FDIC purchased certain of the bank's assets, including the subject promissory note.[2] The FDIC was substituted as party-plaintiff in the bank's suit.

The district court favorably received the FDIC's motion for summary disposition, rendering judgment against Cardinal Oil, Cardinal, Wilson, and Condit for the principal and interest due on the note, plus costs, attorney's fees and post-judgment interest. A default judgment had been entered previ-

---

**1.** No choice of law issue has been raised on appeal. The FDIC invites our attention to several Texas citations. The guaranties at issue were executed in New Mexico in favor of a New Mexico bank. The underlying note was executed in Texas, and Cardinal Oil is a Texas corporation. We need not pause long over this issue, however, as the controlling law of Texas and New Mexico is the same. *See American*

*National Bank of Jacksonville v. FDIC,* 710 F.2d 1528, 1534 n. 7 (5th Cir.1983).

**2.** Under 12 U.S.C. § 1823 the FDIC may function in two capacities—as receiver for a failed bank, and independently in its corporate capacity.

ously against Spikes. The court rejected the counterclaim. The sole issue posited on appeal is the liability of Cardinal, Wilson, and Condit under the guaranty agreements.

### Analysis

■ Summary judgment is proper in a case where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." F.R.C.P. 56(c). *Erco Industries, Ltd. v. Seaboard Coast Line Railroad Co.,* 644 F.2d 424, 428 (5th Cir.1981). Typically, suits on promissory notes provide fit grist for the summary judgment mill. *Lloyd v. Lawrence,* 472 F.2d 313 (5th Cir.1973).

■ The initial contention of the guarantors is that their guaranty agreements are not applicable to the subject promissory note. They maintain that the parties contemplated that the guaranties would extend and apply only to the single transaction involving the interim financing of the oil field servicing equipment. They also suggest that the note Cardinal Oil gave to Spikes was intended to be nonassignable.

Neither argument is persuasive; the language of the instruments belie both contentions. The guaranty agreements, as quoted above, apply to "any and all existing and future indebtedness and liability of any kind ... from [Cardinal Oil] to the Bank ... howsoever and whensoever created, or advised, or evidenced, or acquired."

It cannot be gainsaid that when Spikes assigned the note to the bank, Cardinal Oil became indebted to the bank. Cardinal Oil acknowledged this debt and timely paid six monthly installments. Nor can it be disputed that the guaranty agreements continued to the time of the transfer of the Spikes note. Under the express terms of the guaranty contracts, each guarantor obligated himself for all debts and liabilities arising or incurred prior to written termination of the commitment. The guaranties continue until revoked in writing. No guarantor gave timely written notice of termination. *Starcraft Co., A Division of*

*Bangor Punta Operations, Inc. v. C.J. Heck Co. of Texas, Inc.,* 748 F.2d 982 (5th Cir.1984) (applying Texas law); *Hercules Exploration, Inc. v. Halliburton Co.,* 658 S.W.2d 716 (Tex.Civ.App.1983, *writ ref'd n.r.e.*); *First National Bank of Albuquerque v. Energy Equities, Inc.,* 91 N.M. 11, 569 P.2d 421 (N.M.App.1977).

■ In the face of such express and unequivocal language, free of any ambiguity, we may not look to extraneous evidence of intent. *United States v. Little Joe Trawlers, Inc.,* 776 F.2d 1249 (5th Cir. 1985); *Deauville Corp. v. Federated Department Stores, Inc.,* 756 F.2d 1183 (5th Cir.1985); *Malone v. FDIC,* 611 S.W.2d 855 (Tex.Civ.App.1980, *writ ref'd n.r.e.*); *First National Bank of Albuquerque.*

Examining the language of the agreements we find nothing to indicate that the guaranty was limited to a single note transaction. Nor is there any language excluding the guaranty of an obligation of the corporation, made to another party and subsequently assigned to the bank. Finally, there is nothing in the promissory note curtailing its availability for assignment. The guarantors are liable under the express terms of the agreements they signed.

The guarantors raised three affirmative defenses: failure of consideration, conspiracy, and fraudulent representations. The district court found none meritorious. Nor do we.

■ The consideration for execution of the guaranty agreements is apparent—the granting of the loan for the purchase of the equipment. Since the agreements specifically covered all future debts of Cardinal Oil to the bank, there is no requirement of a new consideration to the guarantors for each new debt. *Crompton-Richmond Co., Inc., Factors v. Briggs,* 560 F.2d 1195 (5th Cir.1977) (applying New York law); *Waller v. Missouri City State Bank,* 482 S.W.2d 40 (Tex.Civ.App.1972, *writ ref'd n.r.e.*); *First National Bank of Albuquerque; American Bank of Commerce v. Covolo, et al.,* 88 N.M. 405, 540 P.2d 1294 (N.M.1975). The claim of lack of consideration is without merit.

■ The conspiracy charge likewise has no basis. Accepting as true all allegations

respecting the relationship between Spikes and the bank, no conspiracy was extant. To be actionable, a conspiracy must be designed to accomplish either an unlawful purpose or a lawful purpose by an unlawful means. *Fenslage v. Dawkins,* 629 F.2d 1107 (5th Cir.1980); *Las Luminarias of the New Mexico Council of the Blind v. Isengard, et al.,* 92 N.M. 297, 587 P.2d 444 (N.M.App.1978); *Schlumberger Well Surveying Corp. v. Nortex Oil & Gas Corp.,* 435 S.W.2d 854 (Tex.1968). The bank merely accepted the note and its accompanying security, as additional security for Spikes' indebtedness. All of its actions with respect to the Cardinal Oil note were substantively and procedurally appropriate.

■ Finally, the allegations of misrepresentations provide no defense to the FDIC suit. The guarantors insist the bank officials misrepresented that the guaranty commitments would cover only the loan for the interim financing of the equipment. Assuming, *per arguendo,* that the guarantors were induced to sign the guaranty agreements by misrepresentations, under the controlling facts herein that defense is barred both statutorily and jurisprudentially.[3] Congress erected a stout barrier in 12 U.S.C. § 1823(e):

> No agreement which tends to diminish or defeat the right, title or interest of the [FDIC] in any asset acquired by it under this section, either as security for a loan or by purchase, shall be valid against the [FDIC] unless such agreement (1) shall be in writing, (2) shall have been executed by the bank and the person or persons claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the bank, (3) shall have been approved by the board of directors of the bank or its loan committee, which approval shall be reflected in the minutes of said board or committee, and (4) shall have been, continuously, from the time of its execution, an official record of the bank.

Although they characterize their defense as fraudulent misrepresentation, the guar-

antors simply assert an oral side agreement not to enforce the guaranty agreements in accordance with their express terms. Section 1823 makes that defense unavailable in the suit by the FDIC. *FDIC v. McClanahan,* 795 F.2d 512 (5th Cir. 1986); *Chatham Ventures, Inc. v. FDIC,* 651 F.2d 355 (5th Cir.1981), *cert. denied,* 456 U.S. 972, 102 S.Ct. 2234, 72 L.Ed.2d 845 (1982); *FDIC v. Fulcher,* 635 F.Supp. 27 (W.D.Tex.1985); *FDIC v. Waldron,* 472 F.Supp. 21 (D.S.C.1979), *aff'd,* 630 F.2d 239 (4th Cir.1980).

In essence, by leaving unrevoked guaranties with the bank the guarantors lent themselves to an arrangement which would tend to mislead the FDIC. *D'Oench, Duhme.* Further, the oral representations do not conform to the requirements of 12 U.S.C. § 1823(e). That defense founders.

The judgment of the district court is AFFIRMED.

---

**3.** The defense is barred by the *D'Oench, Duhme* doctrine, *D'Oench, Duhme & Co. v. FDIC,* 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942).