RESOLUTION TRUST CORPORATION, As Conservator for Columbia Federal Savings and Loan Association, Plaintiff-Appellee,

v.

Stephen G. MARSHALL, Defendant,

Lloyd G. Williams, Jr., Defendant-Appellant.

No. 90-6015
Summary Calendar.

United States Court of Appeals, Fifth Circuit.

Aug. 19, 1991.

Van E. McFarland, Houston, Tex., for Williams.

Kirk Van Tine, Wendy J. Lang, Baker & Botts, Washington D.C., Carolyn B. Southerland, Baker & Botts, Houston, Tex., Philip E. Masquelette, Houston, Tex., for Resolution Trust Corp.

Before JOLLY, HIGGINBOTHAM, and JONES, Circuit Judges.

PER CURIAM:

Lloyd G. Williams appeals an order granting partial summary judgment to the Resolution Trust Corporation in a suit brought by the RTC to enforce a promissory note and guaranty agreement against Stephen G. Marshall and Williams, respectively. Both Williams and Marshall filed notices of appeal, but Marshall's appeal has since been dismissed for want of prosecution. *See* 5th Cir.R. 42.3.2. Williams also disputes an award of attorneys fees. We affirm.

## I.

On February 21, 1989, Stephen G. Marshall executed a promissory note in favor of Columbia Savings Association evidencing a loan of $87,487.40 due on May 1, 1989. This loan was secured by 50,000 shares of stock in Pacific Eastern Corporation. Lloyd G. Williams signed an agreement guaranteeing the loan and any "renewals or extensions" of the loan. Marshall renewed the loan by executing a second note to Columbia on May 22, 1989. This note was in the amount of $85,487.40 and was due on November 18, 1989.

The Office of Thrift Supervision declared Columbia insolvent on December 20, 1989, and appointed the Resolution Trust Corporation as receiver. The RTC subsequently transferred the assets of Columbia to Columbia Federal Savings & Loan Association pursuant to a purchase and assumption transaction. On the same day, the OTS appointed the RTC as conservator for the new Columbia.

Marshall defaulted on the note. The RTC, in its capacity as conservator of the new Columbia, brought this action against Marshall and Williams in the district court to enforce the note and guaranty agreement. Williams responded with a motion to dismiss under Fed.R.Civ.P. 12(b)(6), claiming in part that the RTC was not the

holder of the note, thereby precluding it from pursuing this action.[1] Although the district court's treatment of this motion to dismiss is somewhat confusing, apparently the court denied the motion on May 21, 1990. In an order dated September 11, 1990, the district court unequivocally stated that the motion to dismiss had been denied on May 21, 1990.

The RTC filed a motion for partial summary judgment on August 10, 1990, seeking to establish the liability of Marshall and Williams on the note and guaranty agreement. The RTC reserved the issue of attorneys fees for consideration after resolution of the summary judgment motion. Included with the summary judgment motion were copies of the note, the guaranty agreement, the OTS orders appointing the RTC as receiver of the old Columbia and as conservator of the new Columbia, and the purchase and assumption agreement transferring the assets of the old Columbia to the new Columbia.

Williams responded to the summary judgment motion by objecting to the authenticity of the exhibits. The RTC answered his objections by providing an affidavit from one of its attorneys authenticating the documents. At a hearing convened to consider the summary judgment motion, Williams again objected to the exhibits. The district court ordered a second hearing for the following day. At this hearing, the RTC produced the original copies of the note and guaranty agreement for Williams' inspection. The district court then concluded that no genuine issue of material fact existed, and that summary judgment in favor of the RTC was appropriate. The court requested that the RTC draft a judgment indicating the amount of principal and interest owed on the note. The court also suggested that the parties attempt to resolve the attorneys fees issue. Two weeks later, on September 21, 1990, Williams filed his answer to the RTC's original complaint.

An order dated October 31, 1990, granted the RTC's motion for partial summary judgment, requiring Marshall and Williams to pay the principal and interest owed under the note. Although this order appeared to foreclose any attempt to avoid liability, the district court held a hearing on November 14, 1990, to address the affirmative defenses included in Williams' answer. The court also allowed the parties to present some evidence on the RTC's application for attorneys fees. On November 18, 1990, the district court entered an amended final judgment affirming its previous grant of summary judgment in favor of the RTC and awarding $34,360.84 in attorneys fees to the RTC.

## II.

Williams contends that the district court improperly granted the RTC's summary judgment motion. We subject the grant of summary judgment to de novo review, applying the same standards used by the district court. *Walker v. Sears, Roebuck & Co.*, 853 F.2d 355, 358 (5th Cir.1988). Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R. Civ.P. 56(c). Suits to enforce promissory notes are especially appropriate for disposition by summary judgment. *FDIC v. Cardinal Oil Well Servicing Co.*, 837 F.2d 1369, 1371 (5th Cir.1988).

To prevail in its summary judgment motion, the RTC had to establish (1) that the note and the guaranty agreement exist and are valid, (2) that the RTC is the present holder or owner of the note, (3) that Marshall defaulted on the note, and (4) that Williams is liable under the guaranty agreement. *See, e.g., Delta Savings & Loan Ass'n, Inc. v. A.C.V., Inc.*, 750

---

1. Williams also claimed that the RTC lacked authority to bring this action because designation of the RTC as conservator by the Director of the OTS was invalid. He reached this conclusion by arguing that the Director of the OTS had not been constitutionally appointed to his office, and therefore lacked the power to place the new Columbia in conservatorship. Williams does not pursue this claim on appeal.

F.Supp. 759, 761 (M.D.La.1990); *FSLIC v. Atkinson–Smith University Park Joint Venture,* 729 F.Supp. 1130, 1132 (N.D.Tex. 1989). The district court held that the RTC presented sufficient evidence with its summary judgment motion to establish as a matter of law that it was entitled to recover on the note and guaranty agreement. The court also held that Williams failed to demonstrate the existence of a genuine issue of material fact to preclude summary judgment. Williams challenges the grant of summary judgment in favor of the RTC on several grounds.

### A.

Williams first claims that the RTC failed to present admissible summary judgment evidence of the existence and validity of the note and guaranty agreement. The RTC attached copies of both documents to the memorandum supporting its motion for summary judgment. After Williams objected to the documents as not properly authenticated, an attorney for the RTC submitted an affidavit verifying the authenticity of the documents. The RTC also provided the original copies of the note and guaranty agreement for inspection by Williams during the hearing on the summary judgment motion. Although the district court gave him ample opportunity, Williams could not raise any fact question concerning the validity of the instruments. We find no merit in Williams' claim. The RTC presented sufficient evidence of the note and guaranty agreement.

### B.

Williams next claims that a fact question remains as to the intended scope of the guaranty agreement. He argues that summary judgment was improper because the agreement does not extend to renewals or extensions of the original loan to Marshall. The sole basis for the argument is the fact that the agreement is titled "Specific Guaranty Agreement"; Williams cites several Texas cases distinguishing "specific" and "continuing" guaranties. *See, e.g., FDIC v. Woolard,* 889 F.2d 1477, 1479 (5th Cir.1989). The cases indicate that a specific guaranty applies only to one particular transaction or loan, while a continuing guaranty applies to the original transaction and any extensions or renewals. Williams wants a trial to determine whether the guaranty he signed extends to renewals of the original indebtedness.

A trial is not necessary to make this determination. The plain language of the agreement expressly extends the agreement to renewals of the original indebtedness:

> FOR VALUE RECEIVED, the undersigned ... jointly, severally and unconditionally guarantee the full and punctual payment when due of the following described indebtedness of Stephen G. Marshall ... *together with all renewals and extensions thereof,* even though represented by new instruments....

(emphasis added). The guaranty agreement further provides:

> Bank may, at its option, at any time without the consent of or notice to [Williams] ... without impairing or releasing the obligations of the undersigned (1) ... extend the time of payment of, *renew,* or alter any liability of Borrower hereby guaranteed ... *and the guaranty herein made shall apply to the liabilities of the Borrower, changed extended, renewed or altered in any manner ....*

(emphasis added). When Williams signed this agreement, he guaranteed both the original note and any renewal of that indebtedness. We hold that summary judgment was proper because the language of the guaranty was clear, and as a matter of law the agreement applies to the renewal of the note. *See Southern Natural Gas Co. v. Pursue Energy,* 781 F.2d 1079, 1081 (5th Cir.1986); *Coker v. Coker,* 650 S.W.2d 391, 393 (Tex.1983).

### C.

Williams next argues that by its terms the guaranty agreement inures only to a "holder of the indebtedness." He cites the following language in the guaranty agreement:

This agreement is for the benefit of the bank, and for such other persons as may from time to time become or be the *holders* of any indebtedness hereby guaranteed and this agreement shall be transferable and negotiable with the same force and effect and to the same extent as such indebtedness may be transferrable; it being understood that upon the assignment or transfer by the Bank of any indebtedness hereby guaranteed, the *legal holder* of such indebtedness shall have all the rights granted the Bank under this guaranty.

(emphasis added). Relying on the definition set forth in the Texas version of the Uniform Commercial Code, Williams claims that the RTC is not a "holder" of the note because the old Columbia did not endorse the instrument to either the RTC or to the new Columbia. *See* Tex.Bus. & Comm. Code § 1.201(20). Because the RTC is not a holder of the note, Williams concludes that it has no standing to enforce the guaranty agreement.

The RTC is clearly a "holder" of the note and guaranty agreement within the ordinary meaning of the term, as the RTC has both possession and the right to enforce them. *Compare Black's Law Dictionary*, 865 (4th ed. 1968); *Random House College Dictionary*, 865 (2nd ed. 1982). The RTC is also a "holder in due course" as a matter of federal law. *See Campbell Leasing, Inc. v. FDIC*, 901 F.2d 1244, 1248–49 (5th Cir.1990); *FSLIC v. Murray*, 853 F.2d 1251, 1256 (5th Cir.1988); *Delta Savings & Loan Ass'n Inc. v. A.C.V., Inc.*, 750 F.Supp. 759, 762 (M.D.La.1990); *Adams v. Madison Realty & Development Co.*, 746 F.Supp. 419, 428 (D.N.J.1990). We cannot reasonably read the guaranty agreement to exclude the RTC. The RTC has standing to enforce the guaranty agreement against Williams.

### D.

■ Williams' final argument is that the district court erred in denying additional time for discovery prior to ruling on the RTC's summary judgment motion. He purportedly needed the additional time to determine the disposition of the 50,000 shares of Pacific Eastern Corporation stock held as collateral for the Marshall loan. At the hearing for summary judgment, the district court repeatedly asked Williams how additional discovery would enable him to defeat the motion. Williams failed to satisfy the court that additional discovery would lead to an unresolved issue of material fact. We hold that the district court did not abuse its discretion in refusing to allow Williams an extension of time to investigate the disposition of the Pacific Eastern Stock. *See United States v. Little Al*, 712 F.2d 133, 135 (5th Cir.1983).

We note that Williams raised this argument during the hearing held on November 14, 1990. Although this hearing followed the initial grant of summary judgment, the district court entered an amended final judgment after this hearing affirming the grant of summary judgment in favor of the RTC. We therefore briefly consider this proceeding in our review. At this hearing, the RTC produced the Pacific Eastern stock certificate for Williams' inspection. The court instructed the RTC to hold the stock for possible return to Williams and Marshall if they satisfied the judgment. Additional discovery concerning the disposition of the collateral definitely became unnecessary at this point.

### III.

The guaranty agreement signed by Williams contains a provision for payment of "all reasonable attorneys' fees incurred by Bank in enforcing this agreement." After prevailing on its summary judgment motion, the RTC filed an application for approximately $50,000 in attorneys fees. In its amended final judgment dated November 18, 1990, the district court awarded the RTC attorneys fees of $34,360.84. Williams appeals that determination.

### A.

■ Williams first claims that the RTC was not entitled to attorneys fees because it failed to demand payment from him for the Marshall loan prior to filing suit. Williams argues that the guaranty agree-

ment provides for an award of attorneys fees only "if the obligations hereunder are not paid by the undersigned upon demand." We disagree with Williams' interpretation of the agreement based on one phrase taken out of context.

The applicable portion of the guaranty agreement states in full:

The undersigned further, jointly and severally, agree to pay the Bank, or to its successors or assigns, all reasonable attorneys' fees incurred by Bank in enforcing this agreement or, the holder hereof may elect to recover fifteen percent (15%) of the amount of principal and interest then unpaid as attorneys' fees *if the indebtedness and obligations hereunder are not paid by the undersigned upon demand when due as required herein or if this agreement is enforced by suit or through probate or bankruptcy court or through any judicial proceedings whatsoever ....*

(emphasis added). Williams is correct in stating that he agreed to pay reasonable attorneys fees if he failed to satisfy Marshall's loan upon demand. But the plain language of the agreement indicates that Williams also agreed to pay reasonable attorneys fees, with or without demand for payment, when the bank or its successor had to enforce the agreement "by suit ... or through any judicial proceeding whatsoever."

Furthermore, the guaranty agreement contains a waiver clause, which provides that Williams:

waive[s] notice of acceptance of this guaranty and of any liability to which it applies or may apply, and waive[s] presentment and demand for payment thereof, notice of ... collection or instigation of suit or any other action by Bank in collection thereof including any notice of default in payment thereof or other notice to, or demand of payment therefor on, any party.

Williams ignores the fact that this provision prevents him from complaining about lack of presentment or demand. We hold that the RTC did not have a duty to demand payment from Williams prior to seeking attorneys fees for enforcement of the note and guaranty agreement.

**B.**

Williams also claims that the district court improperly determined the amount of attorneys fees rather than submitting the question to a jury. In his answer to the complaint filed by the RTC, Williams demanded a jury trial of all issues. The district court determined the appropriate amount of attorneys fees to award the RTC without submitting the issue to a jury. Williams argues that under Texas law, a jury must determine the amount of reasonable attorneys fees.

The cases cited by Williams support only the proposition that the determination of attorneys fees is a question for the trier of fact. *Campbell, Athey & Zukowski v. Thomasson,* 863 F.2d 398, 401 (5th Cir.1989); *Tesoro Petroleum Corp. v. Coastal Refining & Marketing, Inc.,* 754 S.W.2d 764, 767 (Tex.Civ.App.1988). In any event, the right to a trial by jury in federal courts is a matter of federal law. *Simler v. Conner,* 372 U.S. 221, 222, 83 S.Ct. 609, 610, 9 L.Ed.2d 691 (1963). Since there is no common law right to recover attorneys fees, the Seventh Amendment does not guarantee a trial by jury to determine the amount of reasonable attorneys fees. *Empire State Ins. Co. v. Chafetz,* 302 F.2d 828, 830 (5th Cir.1962). Although a jury as trier of fact *may* determine the amount of reasonable attorneys fees, *see, e.g., Toren v. Braniff, Inc.,* 893 F.2d 763, 767 (5th Cir.1990); *Farmland Indus. Inc. v. Andrews Transport Co.,* 888 F.2d 1066, 1067 (5th Cir.1989), Williams did not have an absolute right to have the issue decided by a jury.

The guaranty agreement signed by Williams includes a provision for reasonable attorneys fees. Williams does not contest the validity of this clause. We enforce a valid fee-shifting provision as an exception to the American rule. *Engel v. Teleprompter Corp.,* 732 F.2d 1238, 1241 (5th Cir.1984). The district court, acting as the trier of fact in this case, determined that $34,360.84 was a reasonable amount to

**280**

award the RTC in attorneys fees under this provision. The court made this determination after conducting a hearing and reviewing the application and supporting affidavit of the RTC, and the affidavit submitted by Williams contesting the amount of attorneys fees sought by the RTC. Williams does not challenge the reasonableness of the award. We reject his claim that a jury trial was necessary to determine the amount of attorneys fees. The district court properly handled the RTC's application for attorneys fees.[2]

### Conclusion

This case began as a simple suit to enforce a promissory note and guaranty agreement. After clearing the procedural underbrush and trimming away the ownership problems, we are left with the same simple action. Williams signed an agreement guaranteeing a loan made by Columbia to Marshall. The district court enforced that agreement, ordering Williams to satisfy the debt and to pay the attorneys fees expended by the RTC in enforcing the agreement. We find no error in either the enforcement of the guaranty agreement or in the award of attorneys fees.

Accordingly, we AFFIRM the decision of the district court.

AFFIRMED.

---

**2.** A recent Supreme Court decision supports the proposition that in federal courts attorneys fees authorized by statute are properly awarded by the court as a post-judgment matter collateral to the decision on the merits. *Budinich v. Becton Dickinson and Co.,* 486 U.S. 196, 108 S.Ct. 1717, 100 L.Ed.2d 178 (1988). In *Budinich,* the actual issue before the Court was whether a decision was final for purposes of appeal timetables when the question of attorneys fees remained for resolution. We extended *Budinich* to awards of attorneys fees authorized by contract in *First Nationwide Bank v. Summer House Joint Venture,* 902 F.2d 1197, 1199 (5th Cir.1990).