## ST. BERNARD SAVINGS AND LOAN ASSOCIATION

v.

## Joy Levet, Wife of/and George A. CELLA, III.

### Civ. A. No. 91–4493.

United States District Court, E.D. Louisiana.

June 29, 1993.

M. Claire Rosenzweig, Bronfin and Heller New Orleans, LA, for St. Bernard Sav. and Loan Ass'n.

Paul J. Mirabile, Edward T. Suffern, Gary S. Brown, Middleberg, Riddle, & Gianna, New Orleans, LA, for Resolution Trust Corp., as Receiver for Oak Sav. Tree Bank, S.S.B. and Conservator of Oak Tree Federal Sav. Bank, S.S.B., Oak Tree Sav. Bank, S.S.B., fka St. Bernard Sav. Ass'n.

Patrick D. Breeden, Patrick D. Breeden, New Orleans, LA, for Joy Levet, wife of/and George A. Cella, III.

Michael Delesdernier, Sidney Torres, III, Law Offices of Sidney D. Torres, III, Chalmette, LA, for James Kitto.

Regina C.S. Wedig, Alvin Bordelon, Jr., Donald E. Theriot, Bordelon, Hamlin & Theriot, New Orleans, LA, for Secor Bank SSB.

John C. Combe, Jr., Andrew R. Lee, Jones, Walker Firm, New Orleans, LA, for Traveler Indem. Co.

Nathan Gisclair, Jr., Montgomery, Barnett Firm, New Orleans, LA, for U.S. Fidelity and Co.

MENTZ, District Judge.

Finding there to be genuine issues of material fact in each instance, on April 7, 1993

the Court denied Resolution Trust Corporation's ("RTC") Motion for Summary Judgment seeking judgment in its favor as Conservator, for the full and true amount of a promissory note, recognition of a collateral mortgage note and collateral mortgage securing same, and dismissing defendants Joy and George Cella's ("Cella") claim against RTC as Liquidator.

By this minute entry, the Court sua sponte, renders a clarification of the reasons for its denial, in order to clarify what issues and defenses may be raised at trial.

Due to the peculiar facts of this case and for the reasons outlined below, Resolution Trust Corporation is not a holder in due course or a federal holder of due course of the promissory note[1] in the amount of one million nine hundred seventy thousand and no/100 ($1,970,000) dollars dated October 14, 1993, executed by defendants Joy and George Cella III and made payable to the order of First Financial Bank ("FFB").

*The Handnote itself does not meet the requirements of 12 USC 1823(e).*

■ 12 U.S.C. § 1823(e) provides that no agreement which tends to diminish or defeat the right, title, or interest of the Corporation in any asset acquired by it under this section, either as security for a loan or by purchase, shall be valid against the Corporation, unless such agreement

(1) shall be in writing,

(2) shall have been executed by the bank and the person or persons claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the bank,

(3) shall have been approved by the board of directors of the bank or its loan committee, and

(4) shall have been, continuously, from the time of its execution, an official record of the bank.

The Handnote was executed by FFB and Cella on October 14, 1983. St. Bernard Savings purchased the Handnote from FFB on May 21, 1987, *almost eight months after the note matured.* RTC acquired the handnote on October 31, 1991, upon the declared insolvency of Oak Tree Savings, successor to St. Bernard.

From the face of the Handnote itself it is obvious that the only 1823(e) requirement of four that the Handnote meets is the first, that it be in writing. The handnote was not executed by St. Bernard; it was not approved by St. Bernard's loan committee; nor was it an official record of St. Bernard's from the time of its execution.

By acquiring the handnote after its maturity date, St. Bernard was not a holder in due course. Therefore, the handnote itself, by its having matured, tended "to diminish the right, title or interest of the Corporation in any asset acquired by it under this section" and arguably the handnote is therefore invalid as against the Corporation, at the very least as to the issue of whether RTC is a holder in due course.

*Having taken the handnote from St. Bernard,[2] who was not a holder in due course, RTC may not change "lead into gold" and become a holder in due course.*

■ It has been stated ad nauseam that suits to enforce promissory notes are especially appropriate for disposition by summary judgment, "fit grist for the summary judgment mill." *FDIC v. Cardinal Oil Well Servicing Co.,* 837 F.2d 1369, 1371 (5th Cir. 1988). These cases involve the takeover by the RTC or the FDIC of the institutional promisee of the note, unlike the instant case.

However, this court recognizes, as did the 5th Circuit in *Sunbelt Sav., FSB Dallas, Texas v. Montross* 923 F.2d 353[3] (5th Cir. 1991),

the vital role of the FDIC[4] in ensuring the sound, effective, and uninterrupted opera-

---

1. to be referred to throughout as "the Handnote"

2. through its successor Oak Tree, due to a name change

3. reversed and remanded on other grounds 944 F.2d 227 (5th Cir.1991)

4. comparable to the Resolution Trust Corporation, in this case

tion of our banks.[5] We also recognize that the FDIC requires some special protections to enable it to perform this function effectively. For example, the FDIC must be protected from the effect of secret agreements. See *D'Oench, Duhme & Co., Inc. v. FDIC, 315 U.S. 447, 62 S.Ct. 676 [86 L.Ed. 956] (1942); 12 U.S.C. § 1823(e) (1988).* Likewise, we recognize that, because of the circumstances surrounding purchase and assumptions, the FDIC must be accorded holder in due course status when it takes a negotiable instrument in a bulk transfer even if this does not meet the technical requirements of state law. See *Campbell Leasing[, Inc. v. FDIC], 901 F.2d [1244] at 1249 [ (5th Cir.1990) ]. [Federal Sav. and Loan Ins. Corp. v.] Murray, 853 F.2d [1251] at 1255–56 [ (5th Cir.1988) ]* ... We agree that the FDIC should not be disadvantaged by the circumstances of its assumption of control, but this policy does not require giving the FDIC the ability to transmute lead into gold ... *Alchemy is the province of Congress.* at 356–357. Emphasis added.

The court is equally in accord with the 6th circuit in *FDIC v. Wood,* 758 F.2d 156 (6th cir.), cert. denied, 474 U.S. 944, 106 S.Ct. 308, 88 L.Ed.2d 286 (1985), which stated

A negotiable instrument is subject to transfer at any time, and the maker must always be aware that the transferee may be a holder in due course. From the maker's view, there is no difference between his bank failing and the note going to the ... FDIC, and his bank failing after selling the note to a holder in due course. at 161.

But there the line is drawn. As in this case, there is a substantial difference from the maker's point of view, where the bank did not fail, but curiously instead, assigned the note to the servicing savings and loan eight months after its maturity [6], which savings and loan, a mere holder of the note, then fails and is taken over by the RTC. Under these circumstances and others to be discussed below, the RTC may not turn itself from a simple holder to a holder in due course or even a federal holder in due course, which if allowed, would be a metamorphosis from lead to platinum.

So holding maintains commercial expectations [7] and comports with legislative intent.[8] To find the RTC a holder in due course would produce the anomaly of the instance where an institution had a loan on its hands which had been procured in bad faith or had matured without payment. The loan could be transferred to a troubled institution due in time to be taken over by the RTC, and be given new life upon takeover. Such a result would pave the way for underhanded dealings and produce unsavory results and commercial deviations. In this case, for reasons only discovery may reveal and a jury scrutinize, St. Bernard took over a loan it knew well in advance was troubled. What was really going on here?

■ Additional facts of this case are unsettling and therefore distinguishable from those cases which are ripe for the summary judgment mill. There appear to be no "secret agreements", which *D'Oench* and its progeny correctly guard against. The language of the Collateral Pledge Agreement specifically provides for the pledgee to extend the time for payment of monies due.[9]

---

**5.** likewise, comparable to savings and loans or thrifts

**6.** as well as after the property securing the note had been seized by the servicing institution and after the officer who authorized these actions was no longer with the institution.

**7.** Of lesser significance but of some note is that so holding does not put undue burden upon the RTC which must operate within certain time constraints. This dispute was already the subject of litigation in state court when RTC took over, and RTC had been examining Oak Tree's records for considerable time before it did so. Further-

more, a cursory view of the face of the Handnote revealed that St. Bernard/Oak Tree acquired it well after the maturity date.

**8.** See a detailed and particularly enlightening discussion of the legislative history of 12 U.S.C. 1823 in "Borrower Beware: D'Oench, Duhme and Section 1823 Overprotect the Insurer When Bank Fails", 62 *S.Cal.L.Rev.* 253, 275 et seq. (1988).

**9.** Paragraph 5 of the Collateral Pledge Agreement, which surfaced as Exhibit "B" of RTC's Second Supplemental Memorandum in Support of its Motion for Summary Judgment, provides in

The partnership arrangement implicated by the various written and recorded agreements between Cella and FFB, present a material fact at issue as to the mutuality of obligations arising out of the same transaction.

Due to the reasons outlined above and the peculiar facts of this case, the Court concludes that, even armed as it is with 12 U.S.C. 1823(e), *D'Oench* and its progeny, the Resolution Trust Corporation may not become a holder in due course or a federal holder in due course when it takes a promissory note, as here, from a mere holder. By so holding, the Court finds RTC subject to all claims and defenses, real and personal, of Cella.

part: "Insofar as the Collateral shall consist of obligations for the payment of money, Pledgee may extend the time for payment thereof as to any party or parties liable thereon, without incurring any responsibility or liability to Pledgors." At the very least, material facts for the jury are the import of St. Bernard's President Kitto's letter of June 3, 1986, the meaning and effect of which is disputed vehemently, and whether the loan was in default on June 19, 1986.