**FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for Western Bank—Westheimer, Plaintiff,**

v.

**ENVENTURE V, Allen B. Daniels and Don C. Horton, Defendants.**

Civ. A. No. H–93–3125.

United States District Court, S.D.Texas.

Nov. 14, 1994.

Leonard Sparks, III, Houston, TX, for plaintiff.

Allen B. Daniels, Daniels & Collins, Houston, TX, for defendants.

Don C. Horton, pro se.

## MEMORANDUM AND ORDER

CRONE, United States Magistrate Judge.

Pending before the court are Plaintiff Federal Deposit Insurance Corporation's ("the FDIC") motion for summary judgment (Docket Entry # 17) and Defendants Enventure V ("Enventure"), Allen B. Daniels ("Daniels"), and Don C. Horton's ("Horton") (collectively "defendants") cross-motion for summary judgment (Docket Entry # 19). Having reviewed the motions, the submissions of the parties, the pleadings, and the applicable law, it is the opinion of the court that the FDIC's motion should be granted and the defendants' motion should be denied.

### I. Background.

The FDIC was appointed receiver for Western Bank—Westheimer ("the bank") by the Banking Commissioner of Texas at 4:07 p.m. on October 1, 1987, upon his determination that the bank was insolvent. In its capacity as receiver, the FDIC has possession of the books, records, and loan files of the failed bank and is authorized to institute proceedings to collect on delinquent loans. The FDIC filed the instant lawsuit prior to 4:05:40 p.m. on October 1, 1993, within six years after its appointment as receiver for the bank. In this action, the FDIC is seeking to collect on a promissory note in the amount of $131,697.03, executed on July 15, 1986, by Jerry L. Chambers ("Chambers"), a general partner of Enventure, and on continuing guaranties of Enventure's indebtedness signed on June 1, 1982, by Daniels and Horton, two other general partners of Enventure.

In defense of this action, the defendants contend that Chambers was not authorized to execute the note on behalf of Enventure, that the guaranties do not apply to the note in question, and that this action is barred by the statute of limitations.

### II. Analysis.

#### A. The Prerequisites for Summary Judgment as to the FDIC.

■ In order to prevail on summary judgment in this case with respect to the note and the guaranty agreements, the FDIC must establish that: (1) the note and the guaranty agreements exist and are valid; (2) the FDIC is the present holder or owner of the note and the guaranty agreements; (3) Enventure defaulted on the note; and (4) Daniels and Horton are liable under the guaranty agreements. *FDIC v. Selaiden Builders, Inc.,* 973 F.2d 1249, 1254 (5th Cir. 1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1944, 123 L.Ed.2d 650 (1993); *RTC v. Marshall,* 939 F.2d 274, 276 (5th Cir.1991).

■ Here, the defendants do not contest and have offered no summary judgment proof to rebut the FDIC's position that it is the present holder and owner of the instruments and that Enventure defaulted on the note. The unrefuted affidavits of Michael J. Lauer ("Lauer"), a credit specialist with the FDIC, establish that the originals of the note and the guaranties are in the files of the FDIC, that they were obtained from the files of the bank upon the FDIC's appointment as receiver, that they are business records of the bank and/or the FDIC, and that the FDIC has no written documents in its possession that would renew, extend, or alter the terms of the note. This is sufficient to satisfy the FDIC's burden to demonstrate that the instruments in question exist and that it is the owner or holder of them. *See RTC v. Camp,* 965 F.2d 25, 29 (5th Cir.1992); *FDIC v. Staudinger,* 797 F.2d 908, 910 (10th Cir. 1986); *FDIC v. Armstrong,* 784 F.2d 741, 745 (6th Cir.1986). The affidavits likewise establish that the note has matured pursuant to its own terms, that Enventure has failed and refused to pay the note, and that it is in default. The defendants offer no summary

judgment evidence to contradict these assertions. The note, on its face, indicates that it matured on July 15, 1987, and the defendants make no suggestion that it was paid.

▮ Moreover, the defendants do not challenge the authenticity of the signatures on the note or the guaranties. Under Texas law, unless a signatory to an instrument specifically denies the authenticity of his signature, the signature is admitted. TEX.BUS. & COM.CODE § 3.307 (Vernon 1968). When signatures are admitted or established, production of the instrument entitles a holder to recover on it unless the defendant establishes a defense. *Id.* Therefore, unless the defendants establish defenses that are viable against it, the FDIC is entitled to recover on the notes and the guaranties under Texas law. *See RTC v. Marshall,* 939 F.2d at 277; *Whittenburg v. Cessna Fin. Corp.,* 536 S.W.2d 444, 445 (Tex.Civ.App.—Houston [14th Dist.] 1976, writ ref'd n.r.e.); *Hensley v. City Bank & Trust Co.,* 495 S.W.2d 282, 285 (Tex.Civ.App.—Tyler 1973, writ ref'd n.r.e.); *Anderson v. Industrial State Bank,* 478 S.W.2d 215, 217 (Tex.Civ.App.—Houston [14th Dist.] 1972, writ ref'd n.r.e.).

B. *The Enforceability of the Note.*

▮ While the defendants do not contest the authenticity of the note, they contend that it is not enforceable because Chambers was not authorized to execute it. The defendants all admit, however, in their answers to the lawsuit, that Chambers was a general partner of Enventure. Under Section 10 of the Texas Uniform Limited Partnership Act, in effect at the time of these transactions, a general partner of a limited partnership has all the rights and powers and is subject to all the restrictions and liabilities of a partner in a partnership without limited partners. TEX. REV.CIV.STAT.ANN. art. 6132a, § 10(a) (Vernon 1970). Section 9 of the Texas Uniform Partnership Act, in effect at the time, provides, in turn, that "[e]very partner is an agent of the partnership for the purpose of its business, and the act of every partner, including the execution in the partnership name of any instrument, for apparently carrying on in the usual way the business of the partnership of which he is a member binds the partnership, unless the partner so acting has in fact no authority to act for the partnership in the particular matter, and the person with whom he is dealing has knowledge of the fact that he has no such authority." TEX.REV.CIV.STAT.ANN. art. 6132b, § 9(1) (Vernon 1970).

▮ Thus, Enventure is bound by the note, unless Chambers had no authority to execute it on behalf of the limited partnership, and the bank, as well as the FDIC, had knowledge of his lack of authority. As a general rule, a third party doing business with a partnership may hold the partnership liable as a legal entity for any debts created in reliance on such partnership. *Texaco, Inc. v. Wolfe,* 601 S.W.2d 737, 740–41 (Tex.Civ. App.—Houston [1st Dist.] 1980, writ ref'd n.r.e.). Moreover, as general partners of Enventure, Daniels and Horton are jointly and severally liable for partnership debt and may be sued without the joinder of the other partners. TEX.REV.CIV.STAT.ANN. art. 6132b, § 15 (Vernon 1970); *In re Eden,* 141 B.R. 121, 124 (W.D.Tex.1992); *Rohdie v. Washington,* 641 S.W.2d 317, 320 (Tex.App.—El Paso 1982, writ ref'd n.r.e.); *Texaco, Inc. v. Wolfe,* 601 S.W.2d at 741; *Hawn v. Hawn,* 574 S.W.2d 883, 886 (Tex.Civ.App.—Eastland 1979, writ ref'd n.r.e.); *Key v. Davis,* 554 S.W.2d 60, 65 (Tex.Civ.App.—Amarillo 1977, no writ).

▮ The defendants contend, however, that the Agreement of Limited Partnership of Enventure V ("limited partnership agreement") demonstrates that Chambers, acting alone, did not have authority to execute the note. They assert that, under the limited partnership agreement, all of the general partners had to act collectively to bind the partnership. Thus, they argue that all four of the general partners were required to execute the note to make it enforceable against the partnership. The defendants append a copy of the limited partnership agreement to their response to the FDIC's motion for summary judgment. They also allege, in their response, that "[a]t all times germane to this proceeding, Western Bank—Westheimer and subsequently, the Plaintiff had a copy of the AGREEMENT OF LIMITED PARTNERSHIP in

its files." Neither this allegation nor the limited partnership agreement, however, constitutes proper summary judgment evidence in this proceeding, as neither is proven up through affidavits, admissions, or deposition excerpts. In contrast, the FDIC has presented adequate summary judgment evidence, through the affidavits of Lauer, that the limited partnership agreement is not in the possession of the FDIC and that it was not aware of its terms. Accordingly, the FDIC cannot be bound by its terms under Texas law.

 Moreover, the defendants' efforts to defeat the FDIC's claim on the note by relying upon the terms of the limited partnership agreement are barred under federal law by the doctrine first enunciated in *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 458–59, 62 S.Ct. 676, 679–80, 86 L.Ed. 956 (1942). The *D'Oench, Duhme* decision and its progeny have developed a well-known federal common law doctrine immunizing the FDIC and the Resolution Trust Corporation ("RTC"), as receivers and conservators of defunct financial institutions, from claims and defenses based upon agreements not firmly established in the failed financial institution's official records. *RTC v. Oaks Apartments Joint Venture*, 966 F.2d 995, 998 (5th Cir. 1992); *Bowen v. FDIC*, 915 F.2d 1013, 1015–16 (5th Cir.1990); *Beighley v. FDIC*, 868 F.2d 776, 783–84 (5th Cir.1989). The *D'Oench, Duhme* doctrine applies to bar defenses or claims against federal regulators in those instances where a financial institution enters into an oral or secret agreement with a borrower that alters the terms of an existing unqualified obligation. *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. at 460, 62 S.Ct. at 680–81; *RTC v. Oaks Apartments Joint Venture*, 966 F.2d at 998. The doctrine also precludes the enforcement of any defense or claim based upon a written agreement that is not found within the financial institution's records covering the financial transactions at issue. *Id.*

 Furthermore, even if the limited partnership agreement were found in the files of the FDIC, it would still run afoul of 12 U.S.C. § 1823(e) (1989), often referred to as the codification of *D'Oench, Duhme. See*

*RTC v. Camp*, 965 F.2d at 30. This statute provides the FDIC with the power to avoid any agreement that tends to diminish or defeat the interest of the FDIC in any asset acquired by it as a receiver unless such agreement: (1) is in writing; (2) was executed by the depository institution and the obligor contemporaneously with the acquisition of the asset by the institution; (3) was approved by the depository institution's board of directors or its loan committee, which approval is reflected in the minutes of the board or committee; and (4) has been continuously an official record of the depository institution. 12 U.S.C. § 1823(e); *RTC v. Oaks Apartments Joint Venture*, 966 F.2d at 1001; *RTC v. Camp*, 965 F.2d at 30–31.

 The Enventure limited partnership agreement clearly does not meet the parameters of § 1823(e). It was neither executed by the bank nor approved by the bank's board of directors or loan committee and recorded in the minutes of the board or the committee. In fact, it was not executed by the Enventure general partners contemporaneously with the execution of either the note or the guaranties. The partnership agreement appears to have been executed on March 1, 1982, predating by at least four months the date of execution of the guaranties and by over four years the date of execution of the note at issue. Thus, it cannot be interposed as a defense to the FDIC's claims. *See FDIC v. Zook Bros. Constr. Co.*, 973 F.2d 1448, 1452 (9th Cir.1992); *RTC v. Camp*, 965 F.2d at 30; *FDIC v. The Cremona Co.*, 832 F.2d 959, 962 (6th Cir.1987), *cert. dismissed*, 485 U.S. 1017, 108 S.Ct. 1494, 99 L.Ed.2d 883 (1988); *FDIC v. Armstrong*, 784 F.2d 741, 745 (6th Cir. 1986). As noted in *FDIC v. Hoover–Morris Enter.*, 642 F.2d 785, 787 (5th Cir. (Unit B) 1981), "The language of the statute is all encompassing; any agreement is subject to the statute if it tends to defeat or diminish FDIC's rights in an asset purchased under authority of § 1823." Therefore, in this case, the FDIC has met its burden on summary judgment to establish the existence and enforceability of the note.

*C. Scope of the Guaranty Agreements.*

The defendants contend that because the guaranty agreements were executed in 1982,

they are not enforceable as guaranties of the 1986 note. The defendants acknowledge that on June 1, 1982, all four of the general partners guaranteed the repayment of a $225,000.00 loan to Enventure from the bank. They also admit that a renewal or extension of the June 1, 1982, loan would not impair or affect the rights of the FDIC under the continuing guarantees. They argue, however, that there is no evidence that the July 15, 1986, loan was a renewal or extension of the prior loan and assert that the guaranties are not applicable to the note at issue here.

The defendants' position is at variance both with the express language of the continuing guaranties and controlling case law. The guaranties are both entitled "Continuing Guaranty" and expressly state:

> Guarantors hereby jointly and severally unconditionally guarantee to Bank the prompt payment when due of any and all indebtedness and liabilities that are now, or at any time or times hereafter may be or become, owing to Bank from Debtor, howsoever created or arising and howsoever evidenced, whether joint or several, whether absolute or contingent, and whether due or to become due, and all renewals, extensions and rearrangements of such items of indebtedness or liabilities, and any of same (all hereinafter called the "Obligations"), not exceeding in the aggregate principal amount at any one time Two Hundred Twenty–Five Thousand and No/100 Dollars ($225,000.00), together with and plus any and all interest and costs of collection owing and which may become owing thereon or in connection therewith.

Under the express terms of the guaranty agreements, Daniels and Horton obligated themselves for all debts and liabilities of Enventure arising or incurred prior to their written termination of the guaranty commitment or written release by the bank. *FDIC v. Cardinal Oil Well Serv. Co.*, 837 F.2d 1369, 1371 (5th Cir.1988); *see FDIC v. Zook Bros. Constr. Co.*, 973 F.2d at 1451; *FDIC v. Waldron*, 472 F.Supp. 21, 23 (D.S.C.1979), *aff'd*, 630 F.2d 239 (4th Cir.1980). None of the evidence before the court shows a written discontinuance notice by Daniels or Horton or any written release by the bank.

The guaranties are unconditional on their face and apply to all existing and subsequently created indebtedness of Enventure to the bank. There is nothing in the language of the guaranty agreements to suggest that they apply only to a single note and to renewals and extensions of that note. Under analogous facts, a similar argument was rejected in *FDIC v. Cardinal Oil Well Serv. Co.*, 837 F.2d at 1371. Because the agreements specifically cover all future debts of Enventure to the bank, there is no requirement of a new guaranty agreement or new consideration to the guarantors for each new debt. *Id.* Moreover, in the instant case, the 1986 note states on its face that it is a renewal of a prior loan. It also states that it is secured by the guaranties of Allen B. Daniels and Don C. Horton. Thus, the defendants' position is undermined by the very documents they rely·upon in support of their argument that the guaranties are inapplicable in this situation. Under these circumstances, federal law requires enforcement of the guaranties because the FDIC under *D'Oench, Duhme* and § 1823(e) is entitled to rely upon the documents in the loan file. *FDIC v. Zook Bros. Constr. Co.*, 973 F.2d at 1453.

## D. *The Statute of Limitations.*

As a final defense, the defendants contend that this action is barred by the statute of limitations. They argue that it is untimely because the FDIC did not file suit within the six-year period permitted by the statute. The defendants concede that the applicable statute of limitations is contained in the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), which statute reflects the intent of Congress to expand the limitations periods in actions brought by the FDIC. *FDIC v. Belli*, 981 F.2d 838, 841 (5th Cir.1993); *FDIC v. Howse*, 736 F.Supp. 1437, 1444 (S.D.Tex.1990). Under FIRREA, the statute of limitations on contract claims is the longer of the six-year period beginning on the date the claim accrues or the period applicable under state law. 12 U.S.C. § 1821(d)(14)(A). The statute of limitations begins to run on the date the FDIC is appointed receiver or conserva-

tor or the date the cause of action accrues, whichever is later. 12 U.S.C. § 1821(d)(14)(B).

■ In the instant case, it is undisputed that the FDIC was appointed receiver of the bank at 4:07 p.m. on October 1, 1987. The unrefuted summary judgment evidence proffered by the FDIC, as well as records maintained as part of the court's internal docketing system, show that this lawsuit was filed prior to 4:05:40 p.m. on October 1, 1993, when it was assigned to a judge. Thus, the evidence definitively establishes that this action was filed within the six-year period following the appointment of the FDIC as receiver of the bank. Therefore, it is timely under the applicable statute of limitations.

■ The defendants argue, however, that the statute of limitations expired not on the sixth anniversary of the appointment of the FDIC as receiver, but at the end of the preceding day. This calculation of the limitations period is supported neither by the language of the statute nor by applicable case law. The very case upon which the defendants rely holds, contrary to their position, that the statute of limitations expires on the sixth anniversary of the appointment date, not the day before. See FDIC v. Bledsoe, 989 F.2d 805, 809, 812 (5th Cir.1993); see also FDIC v. Howse, 736 F.Supp. at 1445.

■ Moreover, in computing when a federal statute of limitations expires, the United States Court of Appeals for the Fifth Circuit excludes the day of the transaction and includes the last day of the period, as contemplated by FED.R.CIV.P. 6(a). Lawson v. Conyers Chrysler, Plymouth & Dodge Trucks, Inc., 600 F.2d 465, 466 (5th Cir.1979); see Vernell v. United States Postal Serv., 819 F.2d 108, 111 (5th Cir.1987); In re Gotham Provision Co., 669 F.2d 1000, 1014 (5th Cir. (Unit B) 1982), cert. denied, 459 U.S. 858, 103 S.Ct. 129, 74 L.Ed.2d 111 (1982). Application of Rule 6(a) is especially appropriate here in view of the remedial purpose of FIRREA and Congress' intent to expand the limitations period in actions brought by the FDIC. See In re Gotham Provision Co., 669 F.2d at 1014; Lawson v. Conyers Chrysler, Plymouth & Dodge Trucks, Inc., 600 F.2d at

466. Therefore, the defendants' contention that the FDIC's claim is barred by the statute of limitations is without merit.

III. *Conclusion.*

The affidavits and documents proffered by the FDIC, which remain unrebutted, when coupled with controlling precedent, establish that there is no genuine issue of material fact in this case and that the FDIC is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 257, 106 S.Ct. 2505, 2514–15, 91 L.Ed.2d 202 (1986). As noted in *FDIC v. Cardinal Oil Well Serv. Co., Inc.,* 837 F.2d at 1371, "Typically, suits on promissory notes provide fit grist for the summary judgment mill." This case is not an exception.

■ Moreover, as the prevailing party, the FDIC is entitled to recover attorney's fees under TEX.CIV.PRAC. & REM.CODE § 38.001 (Vernon 1992), as well as under the terms of the instruments upon which it sues. After considering the nature of the case, the quality of the representation, and the affidavit of Leonard Sparks III, the court has determined that a reasonable attorney's fee is $12,000.00. See *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717–18 (5th Cir.1974).

Accordingly, the FDIC's motion for summary judgment is GRANTED. The defendants' motion for summary judgment is DENIED. Defendants are jointly and severally liable to the FDIC for the principal amount of $131,697.03, plus unpaid interest of $158,708.27. The defendants are likewise jointly and severally liable to the FDIC for attorney's fees in the amount of $12,000.00.

IT IS SO ORDERED.

### FINAL JUDGMENT

In accordance with the summary judgment granted in this case, it is ORDERED that Plaintiff Federal Deposit Insurance Corporation, as Receiver for Western Bank—Westheimer, recover of Defendants Enventure V, Allen B. Daniels, and Don C. Horton, jointly and severally:

the principal amount of $131,697.03;

unpaid accrued interest through November 10, 1994, of $158,708.27;

attorney's fees of $12,000.00; and

postjudgment interest on the total of $302,-405.30 at the rate of 6.06% per annum until paid.

Plaintiff Federal Deposit Insurance Corporation's court costs are taxed against Defendants Enventure V, Allen B. Daniels, and Don C. Horton, jointly and severally.