**RESOLUTION TRUST CORPORATION,** **As Receiver for First Savings and Loan Association, F.A., Resolution Trust Corporation, As Conservator for First Savings and Loan Association, F.A., Temple, And Resolution Trust Corporation, As Receiver for First America Savings Bank, F.S.B., Fort Smith, Arkansas, Plaintiffs–Appellees,**

v.

**L. Bradley CAMP and S. Foster Yancey, Jr., Defendants–Appellants.**

**No. 91–1609.**

United States Court of Appeals, Fifth Circuit.

July 9, 1992.

Foster Reese, III, Maria Thomas–Jones, Chapman & Reese, Dallas, Tex., for RTC as receiver for First America Sav. Bank, et al.

Before WISDOM, REYNALDO G. GARZA, and JONES, Circuit Judges.

REYNALDO G. GARZA, Circuit Judge:

In this case, makers of a note in favor of failed lending institutions appeal summary judgment against them, alleging that the district court found in favor of parties which by the time of judgment had been substituted out of the case, that genuine issues of material fact existed, and that the district court failed to give adequate consideration to their affirmative defenses. For the reasons discussed below, we affirm the judgment of the district court.

## PROCEDURAL HISTORY

This action arises out of a dispute on a $500,000 promissory note executed by Defendant–Appellants, L. Bradley Camp and S. Foster Yancey, Jr., on June 11, 1986. The note was jointly payable to three savings and loan associations: First Federal Savings and Loan Association of Waco, Texas ("Waco"); First Federal Savings and Loan Association of Temple, Texas ("Temple"); and First America Federal Savings Bank of Fort Smith, Arkansas ("First America") (collectively "Lenders"), each of which owned a one-third interest in the note. Camp and Yancey did not make payment on the note when it became due on June 11, 1988. On September 9, 1988, the lenders filed suit against Defendant–Appellants in the 191st Judicial District Court of Dallas County, Texas.

On August 11, 1989, Camp and Yancey filed an answer alleging failure to comply with conditions precedent, failure of consideration and fraud as affirmative defenses. On that same date, the action was removed to the federal court.

In July of 1989, the Federal Home Loan Board ("FHLBB") had declared Waco insol-

Robert M. Greenberg, Dallas, Tex., for defendants-appellants.

Michelle Kosse, Ann S. DuRoss, Asst. Gen. Counsel, FDIC, Washington, D.C., for RTC.

Jamie S. King, Robert J. Clary, Johnson, Bromberg & Leeds, Dallas, Tex., for RTC as receiver for First Federal Sav. & Loan Ass'n, F.A.

vent and appointed the Federal Savings and Loan Insurance Corporation ("FSLIC") as receiver. On that same date, the FHLBB created a new federal mutual savings and loan association, First Savings and Loan Association of Waco, Texas, F.A. ("FSLA"), to which substantially all of the assets of Waco were transferred. FHLBB appointed FSLIC as conservator of FSLA. On August 22, 1989, the FSLIC, in its capacity as conservator for FSLA, by and through its managing agent, the Federal Deposit Insurance Corporation ("FDIC"), along with Temple and First America, filed their Motion for Substitution of Plaintiff and Counsel. The Motion asserted that FSLA had assumed Waco's interest in the note. After the enactment of the Financial Institutions Reform, Recovery and Enforcement Act of 1989, P.L. 101–73, 103 Stat. 183 ("FIRREA"), the Office of Thrift Supervision ("OTS") appointed the Resolution Trust Corporation ("RTC") as receiver to replace the conservator of FSLA on June 15, 1990. The RTC as Receiver for FSLA subsequently filed a motion for substitution as plaintiff in place of the RTC as Conservator for FSLA in the action, and on July 26, 1991, the district court granted the motion.

On May 25, 1990, the Director of OTS declared First America insolvent and appointed the RTC as its receiver. On that same date, the Director of OTS also authorized the incorporation of a new federal savings association, First America Savings Bank of Fort Smith, Arkansas ("New First America"), and appointed the RTC as conservator. RTC filed a Motion for Substitution of Plaintiff and Counsel, alleging that substantially all of First America's assets, including interest in the note, had been transferred to New First America. The district court granted the motion on August 20, 1990.

On July 30, 1990, First America, Temple and RTC as receiver for FSLA filed a motion for summary judgment.

On August 24, 1990, the Director of OTS declared Temple insolvent and appointed RTC as its receiver. On that same date, the Director of OTS also authorized the incorporation of a new federal savings association, First Savings and Loan Association of Temple, Texas, F.A. ("New Temple"). On October 15, 1990, the RTC as conservator for New Temple filed a Plea of Intervention, Motion for Substitution of Plaintiff and Substitution of Counsel, alleging that New Temple had acquired substantially all the assets of Temple, including Temple's interest in the note. On November 19, 1990, the district court entered an order substituting New Temple as a party in place of Temple.

On December 7, 1990, the Director of OTS placed New First America into receivership and appointed the RTC as its Receiver. On January 25, 1991, the district court substituted The RTC as Receiver for New First America.

The district court granted summary judgment in favor of plaintiffs on April 5, 1991. This appeal followed.

### FACTS

On October 27, 1983, David M. Roan entered into an agency agreement with William G. Roberds III pursuant to which Roberds was to enter into a joint venture agreement to acquire a 50% interest in the Trinity Boulevard Joint Venture ("Trinity"), with 25% being for Roan's benefit. The joint venture agreement was entered into on October 21, 1983 and was amended and restated on October 31, 1983 by and between Yancey–Camp Management Company, Roberds and Roberds Investment, Inc. Roberds did acquire a 50% interest in Trinity.

Trinity entered into a loan agreement with Texas State Mortgages, Inc. ("TSM"), a wholly owned subsidiary of Waco, in which TSM agreed to lend Trinity up to $23,650,000 for the acquisition and development of real property in Tarrant County, Texas. Trinity executed a note payable to TSM and a deed of trust, which Camp and Yancey signed as guarantors, covering the property to secure this note. TSM transferred the note and deed of trust to Waco, Temple and First America in equal one-third shares.

On January 9, 1984, Roberds, Roan and others entered into the Mainline Pipeline Joint Venture Agreement (the "Mainline Joint Venture"). The Mainline Joint Venture acquired three parcels of the tract which had been acquired by Trinity.

On May 30, 1984, Roberds Investments, Inc. and Yancey–Camp Management Company entered into the Southwest Grapevine Commercial Park Joint Venture ("Grapevine"). On or about May 31, 1984, Grapevine entered into a loan agreement with TSM pursuant to which TSM agreed to lend up to $9,180,000 for the acquisition and development of real property in Tarrant County, Texas. Grapevine executed a note and a deed of trust to secure the Note covering the property in Tarrant County. Camp, Yancey and Roberds guaranteed this note. TSM transferred undivided interests in this note, the deed of trust and the guarantees to Waco (68%) and Village Savings Association (32%).

Roan had other dealings with TSM, Waco, Temple and First America. The Lenders wanted Roan released from any and all liability in connection with the Trinity Joint Venture. Therefore, on June 11, 1986, TSM, Waco, Temple, First America, Trinity, Yancey–Camp Management Company, Roberds Investments, Inc., Roberds, Yancey, Camp, and Roan entered into a Settlement Agreement which released Roberds, and therefore Roan, from liability. As part of the Settlement Agreement, Camp and Yancey executed the note at issue in this case in the amount of $500,-000.

When the note came due on June 11, 1988, Camp and Yancey defaulted.

## ANALYSIS

Summary judgment is appropriate if the moving party establishes that there is no genuine issue of material fact and that it is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c). In reviewing the district court's grant of summary judgment in favor of Plaintiff-Appellees, we review all issues *de novo*, applying the same test as did the district court. *LeJeune v. Shell Oil Co.*, 950 F.2d 267, 268 (5th Cir.1992).

I. *The District Court did not Grant Summary Judgment to the Wrong Parties.*

The district court's order of April 5, 1991 stated that it found in favor of

plaintiff Resolution Trust Corporation, as Receiver for First Savings and Loan Association, F.A., First Federal Savings and Loan Association of Temple, and First America Federal Savings Bank of Fort Smith, Arkansas ...

■ Appellants read this as granting summary judgment in favor of Temple and First America, who were no longer part of the action by the date of the district court's judgment. We do not so read the order. The district court clearly said "plaintiff," not "plaintiffs." The district court was plainly ordering summary judgment in favor of the RTC as the substituted party for the three failed entities.

Appellants argue that the district court could not have meant to order summary judgment in favor of the RTC as receiver for Temple and First America because these entities had not filed summary judgment motions. Alternatively, Appellants contend, if the district court did mean to grant summary judgment for RTC as receiver for the latter two entities, it erred because summary judgment motions had not been filed.

■ We do not agree. A district court may grant summary judgment *sua sponte* "provided that the losing party has been given adequate notice and opportunity to respond." *Scott v. Mississippi Dept. of Corrections*, 961 F.2d 77, 79 n. 5 (5th Cir. 1992) (quoting *Arkwright–Boston Mfrs. Mut. Ins. Co. v. Aries Marine Corp.*, 932 F.2d 442, 444 (5th Cir.1991)). RTC as receiver for FSLA, Temple and First America together filed their Motion For Summary Judgment on July 30, 1990. The district court gave Appellants until December 12, 1990 to respond, and did not ultimately grant summary judgment until April 5, 1991. Moreover, the district court had granted the RTC as receiver for Temple and First America leave to file summary

judgment motions. It is hard to imagine that Appellants could have had any clearer notice.

## II. *The District Court did not Err in Granting Summary Judgment.*

The motion for summary judgment at issue was supported by several affidavits. According to Fed.R.Civ.P. 56(e):

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

In other words, it does not suffice for Appellants merely to state that the RTC's allegations, backed up with affidavits, might be in error. Camp and Yancey must either submit facts which demonstrate that RTC's supported allegations are questionable, or, alternatively, Appellants must demonstrate that RTC's allegations are in fact not properly supported. Camp and Yancey have relied upon the latter strategy. They point out that RTC did not produce the original note in question, but rather submitted a copy along with the affidavit of Patricia Toliver, who averred that she is a Special Project Manager for Hinton Mortgage & Investment Co. ("Hinton").

According to Toliver, Hinton contracted with RTC to manage certain assets held by RTC in its capacity as receiver for FSLA, including the note in question. Toliver also averred that the photocopy is a true and correct copy of the note. Appellants fault this affidavit for failing to include a copy of RTC's contract with Hinton. Given the facts of this case, we do not share Appellants' concerns because Hinton's particular duties under the claimed contract are not at issue. Nor, as discussed below, do we feel that there is any reason to suspect that Hinton could be holding the note for any party other than the RTC.

RTC's other affiants testified to the effect that the RTC took ownership and possession of the assets of the failed institutions, including the note. These affiants were later deposed. Camp and Yancey find fault with these affidavits because while the affiants had personal knowledge that RTC took over the assets of the failed institutions, they had no precise personal knowledge of this particular note.

Appellants would have us hold RTC to a standard so strict that summary judgment would be all but impossible for plaintiffs in cases such as these. This would be contrary to our previous jurisprudence. We have stated that "suits on promissory notes provide fit grist for the summary judgment mill." *FDIC v. Cardinal Oil Well Servicing Co.*, 837 F.2d 1369, 1372 (5th Cir.1988).

Regarding the Toliver affidavit, we acknowledge the fact that mere possession of the original of an unendorsed note payable to the order of another is not alone sufficient evidence under Texas law to prove that one is the owner and holder. *See Jernigan v. Bank One*, 803 S.W.2d 774, 776–777 (Tex.App.—Houston, 14th Dist.1991). We would not hesitate to reverse summary judgment had Appellants pointed to evidence in the record to the effect that they had a legitimate fear that the RTC was not the owner and holder of the note in question and that some other entity might later approach them demanding payment. In such a case, affidavits attesting merely that the RTC had taken possession of assets of a failed institution would not suffice.[1] Camp and Yancey have neither produced evidence nor have they pointed to anything in the record to

---

1. For instance, in a recent case, we reversed summary judgment because of evidence in the record that the FDIC, as receiver of a failed institution, had conveyed certain assets of the failed bank to another bank in a purchase and assumption agreement, and conveyed other assets to FDIC–Corporate pursuant to a contract of sale. Therefore, the appellants in that case had demonstrated a real question as to the identity of the owner and holder of the note in question. *FDIC v. Clark*, No. 91–8259 (5th Cir. March 16, 1992) (per curiam) (unpublished) [958 F.2d 1079 (table) ].

indicate that they have any legitimate fear that any entity other than the RTC is owner and holder of the note.

III. *The RTC is Protected from Appellants' Affirmative Defenses.*

■ Appellants claim that they are not liable on the note due to (1) failure of consideration; (2) failure of condition precedent/breach of contract; and (3) fraud. Specifically, they contend that their performance on the note was conditioned on successful resolution of a settlement regarding the Grapevine transaction. As the district court pointed out, however, the alleged conditional performance is evident neither from the face of the Settlement Agreement nor the note. Therefore, the district court held that Appellants' affirmative defenses are rendered invalid by the doctrine espoused by the Supreme Court in *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), "which bars the use of unrecorded agreements as the basis for [such] claims or defenses ..." *Bowen v. FDIC*, 915 F.2d 1013, 1014 (5th Cir.1990).

The *D'Oench, Duhme* doctrine bars defenses based on side agreements between the lending institution and a borrower who "lent himself to a scheme or arrangement," 315 U.S. at 460, 62 S.Ct. at 681, that would likely mislead a federal examiner who must ascertain the value of a failed institution's assets "with great speed, usually overnight ..." *Lanley v. FDIC*, 484 U.S. 86, 91, 108 S.Ct. 396, 401, 98 L.Ed.2d 340 (1987) (quoting *Gunter v. Hutcheson*, 674 F.2d 862, 865 (11th Cir.1982)).

Appellants argue that, unlike the original *D'Oench, Duhme* case, in the case under review "there was no such secret agreement or secret arrangement which was designed to deceive creditors or the public authority ..." Appellants' Brief at 34. In *Beighley v. FDIC*, 868 F.2d 776, 784 (5th Cir.1989), however, we found that the test is not whether the borrower had participated knowingly in a such a scheme, but simply whether by his actions he had lent himself to an arrangement which would have the effect of deceiving an examiner.

■ Appellants, on the other hand, claim that an April 1, 1986 letter from Camp to TSM president Robert Sandlin dated over two months prior to the Grapevine Settlement Agreement removes the affirmative defenses from the aegis of *D'Oench, Duhme* and *Beighley*. This letter provides, in pertinent part:

> Although we understand that there is not a complete identity of interests among the lenders on the two projects, the above proposals are conditioned on acceptance of both. However, to the end that any losses of the parties may be avoided or at least minimized, we remain open further discussion of these matters, ...

We note that the record is devoid of evidence that this letter was in the bank's files. Moreover, we are far from convinced that this letter would indicate to a reasonably prudent bank examiner that performance was conditional.

Even if this letter were in the bank's files and would indicate that its author understood that performance was conditional, however, we would still have to affirm the district court's judgment because the letter runs afoul of 12 U.S.C. § 1823(e), often referred to as the codification of *D'Oench, Duhme*. This section provides:

> No agreement which tends to diminish or defeat the interest of the Corporation in any asset acquired by it under this section or section 1821 of this title, either as security for a loan or by purchase or as receiver of any insured depository institution, shall be valid against the Corporation unless such agreement—
>
> (1) is in writing
>
> (2) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,
>
> (3) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and

(4) has been, continuously, from the time of its execution, an official record of the depository institution.

Appellants do not attempt to argue that the Camp letter passes muster under Section 1823(e). Rather, they contend in one paragraph at the end of their brief that to apply this section to this case would be to give retroactive effect to the FIRREA. Prior to FIRREA, Section 1823(e) applied only to the FDIC in its corporate capacity. FIRREA took effect after the events in question but prior to the judgment of the district court.

Appellants argue that FIRREA does not apply retroactively. We will assume *arguendo* that Appellants have adequately raised this issue before us. We note that the Seventh and Eighth Circuits have found FIRREA to be retroactive regarding Section 1823(e). *FDIC v. Wright,* 942 F.2d 1089, 1095–97 (7th Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 1937, 118 L.Ed.2d 544 (1992); *FDIC v. Kasal,* 913 F.2d 487, 493 (8th Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 1072, 112 L.Ed.2d 1178 (1991). We need not, however, adopt *Wright* and/or *Kasal* to find that the letter's failure to pass muster under Section 1823(e) is fatal to Appellants' argument. Whether or not Congress intended FIRREA to apply retroactively, this Court has always viewed Section 1823(e) as a codification of *D'Oench, Duhme.* As the Eleventh Circuit has stated:

> Both § 1823(e) and the *D'Oench* common law doctrine are designed to further the same objective of protecting the federal banking regulatory authority from undocumented agreements that impede the regulatory authority's ability to perform its Congressionally mandated functions. Because § 1823(e) is merely a codification of *D'Oench* and its progeny, defenses premised upon § 1823(e) and *D'Oench* are usually construed in tandem.

*FDIC v. McCullough,* 911 F.2d 593, 598 n. 4 (11th Cir.1990) (citing Fifth Circuit precedent).

In a situation similar to the one presented to us on this appeal, we found that we did not have to consider whether the statutory change in Section 1823(e) applied in a case brought prior to the FIRREA "because we have long held that both doctrines [2] bar similar defenses by borrowers." *Kilpatrick v. Riddle,* 907 F.2d 1523, 1526 n. 4 (5th Cir.1990). As the Camp letter clearly fails under Section 1823(e), it fails under *D'Oench, Duhme.*

## CONCLUSIONS

The district court did not render summary judgment in favor of the wrong parties. Moreover, the evidence of record sufficed for the district court to conclude that there was no genuine issue of material fact. Finally, Appellants' affirmative defenses are precluded by federal law. Therefore, the summary judgment of the district court is

AFFIRMED.

**2.** That is, both the statutory and the common law *D'Oench* doctrines.