FDIC 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-92-588-CV





FEDERAL DEPOSIT INSURANCE CORPORATION,



 
 APPELLANT


vs.





WESTMINSTER GLEN JOINT VENTURE, INC.; PAIGE MASSEY; 


AND WESTMINSTER GLEN, INC., 


 
APPELLEES



 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT



NO. 448,169, HONORABLE PETE LOWRY, JUDGE PRESIDING



 






 In a bench trial, the Federal Deposit Insurance Corporation (FDIC), appellant,
sought to collect on a promissory note and guaranty agreements against Westminster Glen, Inc. (1)
(WGI) and Paige Massey, appellees, and Charles R. Webb. (2) After FDIC presented its evidence
and rested, all parties moved for judgment. The trial court denied FDIC's motion and granted
judgment for WGI, Massey, and Webb. In fourteen points of error, FDIC argues that it
established its right to recover on the note and guaranty agreements as a matter of law or by the
great weight and preponderance of the evidence. We will affirm the trial court's judgment.


BACKGROUND


 The Office of Comptroller of Currency appointed FDIC as receiver of the insolvent
Lake Austin National Bank. As receiver, FDIC entered into a purchase and assumption agreement
with Greater Texas Bank Southwest, the assuming bank. Under this agreement, the assuming
bank purchased certain assets and assumed certain liabilities of the insolvent bank. The remaining
assets not purchased by the assuming bank were transferred to FDIC in its corporate capacity.

 In this corporate capacity, FDIC then began an action to recover amounts owed to
the Lake Austin National Bank under a note and guaranty instruments. FDIC originally sued
Westminster Glen Joint Venture (Joint Venture), WGI, Massey, Webb, and other individuals. 
In its petition, FDIC alleged that WGI was a member of the Joint Venture and that Massey was
a guarantor of the note. 

 FDIC attached to its petition a copy of the note which named the borrower as the
Joint Venture and the lender as Lake Austin National Bank. The note also contained a signature
with "Charles R. Webb" typed beneath as the party signing the promissory note. The attached
copy of the note did not contain an indorsement to FDIC. In addition, FDIC attached copies of
the front page of the guaranty agreements. These documents were provided to Massey in the same
form during discovery. 

 Massey, Webb, and WGI all filed general denials. However, all other defendants,
including the Joint Venture, failed to appear or answer. FDIC obtained an interlocutory default
judgment and severance against those parties. Webb, Massey, and WGI were the remaining
defendants after the severance. 

 Massey amended his answer to include a specific denial. He answered that he was
not liable as a guarantor "because no valid debt was created payable to the bank by the
Westminster Glen Joint Venture, as Charles Webb is not a Joint Venturer." WGI amended its
answer to specifically deny liability on the basis of failed consideration and mispayment. 

 In a bench trial, FDIC offered evidence to establish its right to recover against WGI
and Massey under the note and guaranty agreement. It offered and had admitted into evidence,
over objection, the promissory note; however the promissory note introduced into evidence
contained an indorsement to FDIC which was not provided to Massey in his discovery request. 
The trial court also admitted into evidence a complete guaranty agreement, allegedly signed by
Massey, that included a back page also not provided to Massey in discovery. FDIC presented
three other documents: the declaration of Lake Austin National Bank's insolvency and the
appointment of FDIC as receiver; the purchase and assumption agreement; and a federal district
court order approving the purchase and assumption agreement. 

 Kevin O'Neal, a custodian of FDIC's records, testified that he participated in the
actual closing of Lake Austin National Bank. He said he was one of the members who inventoried
specific areas of the bank and identified the promissory note and guaranty agreements as
documents kept in FDIC's records. He further stated that payments had been made on the note
and that FDIC was the holder and owner of the note. On cross-examination, O'Neal agreed that
he did not know who the members of the Joint Venture were and that Webb did not appear as a
joint venturer on any of the documents.

 FDIC rested its case. Before appellees presented any of their own evidence, both
sides moved for judgment. The trial court denied FDIC's motion and granted appellees' motion. 
Upon request, the trial court made findings of fact and conclusions of law. The court failed to
find the essential elements necessary for FDIC to recover under the note and guaranty agreement
and essentially concluded that FDIC had not met its burden of proof. FDIC challenges the legal
and factual sufficiency of these findings and argues that the trial court erred by not granting
FDIC's own motion for judgment. 



DISCUSSION


 The standard of review for a trial court's granting of a motion for judgment in a
bench trial differs from the standard of review for a directed verdict in a jury trial. Qantel
Business Sys., Inc. v. Custom Controls Co., 761 S.W.2d 302, 304 (Tex. 1988). The trial judge
in a non-jury trial acts as both the trier of fact and law. Therefore, the trial judge may rule on
both the factual and legal issues at the close of the plaintiff's case and make factual findings at that
time if requested. Id. 

 Because FDIC challenges the legal sufficiency of adverse findings for which it
bears the burden of proof, we must first examine the record for evidence that supports the
findings, while disregarding all opposing evidence. Sterner v. Marathon Oil Co., 767 S.W.2d
686, 690 (Tex. 1989). If there is no evidence to support the court's fact findings, then we must
examine the entire record to see if the contrary proposition is established as a matter of law. Id.

 Alternatively, FDIC challenges the factual sufficiency of some of the court's
findings, and argues that these findings are against the great weight and preponderance of the
evidence. Therefore, we must consider and weigh all the evidence and set aside a finding only
if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. 
See Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986).

 FDIC based liability against WGI as a member of the Joint Venture and did not
allege that WGI was a guarantor. In contrast, FDIC based its liability against Massey only as a
guarantor and did not include Massey as a member of the Joint Venture in its petition. We review
the judgment for WGI and Massey separately. (3)



A. Massey

 For FDIC to recover against Massey as a guarantor, it must first establish the
existence of a valid note and guaranty, that it is the present owner and holder of the note, that the
obligor defaulted on the note, and that Massey is liable under the guaranty. See Resolution Trust
Corp. v. Marshall, 939 F.2d 274, 276 (5th Cir. 1991). The trial court essentially found that
FDIC failed to carry its burden of proof in establishing every element of its cause of action. 
FDIC raises eleven points of error that apply to Massey. It specifically challenges the court's
failure to find that: (1) FDIC was the owner and holder of the note and guaranty; (4) (2) Webb's
signature on the note was genuine and authorized by the Joint Venture, therefore binding the Joint
Venture; (5) and (3) Massey executed the guaranty. (6) Additionally, FDIC alleges in its thirteenth
point of error that, as a matter of law, the D'Oench Duhme doctrine and the federal holder in due
course doctrine bar all of Massey's defenses. 

 With respect to the guaranty's execution, Massey did not plead a specific, verified
denial of the guaranty instrument in his amended answer. FDIC argues, therefore, that the
guaranty was admitted into evidence fully proved. See Tex. R. Civ. P. 93(7). Massey replies
in his brief that he does not contest the genuineness of his signature, but the existence and validity
of the document in the form introduced at trial. 

 At trial, FDIC offered into evidence a copy of the guaranty, containing both a front
and back page. Massey objected on the grounds that the guaranty at trial varied in form from the
guaranty produced in discovery. In response, FDIC conceded that the back page of the guaranty
had not been provided in discovery, but stated that Massey had received the front page of the
guaranty, which contained Massey's signature and the specific language guaranteeing payment of
the Joint Venture debts. This front page of the guaranty was attached to FDIC's original petition
and was identical to the front page of the guaranty admitted at trial. 

 A party who fails to respond to a discovery request shall not be entitled to present
evidence that the party was under a duty to provide unless the trial court finds good cause. Tex.
R. Civ. P. 215(5); see Alvarado v. Farah Mfg. Co., 830 S.W.2d 911, 913-14 (Tex. 1992); Varner
v. Howe, 860 S.W.2d 458, 464 (Tex. App.--El Paso 1993, no writ) (Rule 215(5) is automatic
sanction for unfurnished, specifically requested documents and tangible things); James v. Texas
Dept. of Human Servs., 836 S.W.2d 236, 241 (Tex. App.--Texarkana 1992, no writ) (trial court
erred in admitting videotape not disclosed in discovery). In this case, however, the vital part of
the document, containing Massey's signature and the specific unconditional guaranty of payment
for the Joint Venture indebtedness, was provided to Massey as an attachment to FDIC's petition. 
While FDIC's failure to provide a complete guaranty may have been grounds for excluding the
back page of the guaranty, we do not believe it provided a basis to exclude the front page that had
been duly provided. Moreover, we fail to see how Massey was relieved of his burden to deny his
execution of a guaranty bearing his signature on the front page provided to him.

 While FDIC may have met its burden of proof in establishing Massey's execution
of the guaranty under rule 93(7), sustaining the eighth point of error does not require reversal. 
In order to reverse, we must also conclude that FDIC established as a matter of law or by the
great weight and preponderance of the evidence that the note is a valid debt of the joint venture;
moreover, FDIC must have established as a matter of law that it was the owner and holder of the
note. (7) We conclude that sufficient evidence supports the trial court's failure to find these essential
elements for recovery.

 Massey's guaranty is continuing and unconditional, guaranteeing the prompt
payment of any indebtedness of the Joint Venture. The guaranty waives presentment and notice
of dishonor. One guaranteeing payment in this manner is treated as a primary party. See Tex.
Bus. & Com. Code Ann. § 3.416 (West 1968); Universal Metals & Mach., Inc. v. Bohart, 539
S.W.2d 874, 877 (Tex. 1976). However, Massey pleaded in his amended answer that he is not
liable as a guarantor because "no valid debt was created payable to the Bank by the Westminster
Glen Joint Venture, as Charles Webb is not a Joint Venturer." (emphasis added). Massey
therefore argues that Webb's signature on the note is unauthorized. See Tex. Bus. & Com. Code
Ann. § 1.201(43) (West 1968) (unauthorized signature is one made without actual, implied, or
apparent authority and includes forgery).

 If the note was unauthorized, Massey is not liable unless: (1) it was shown that he
expressly guaranteed the specific note in question, as in Bohart; or (2) the note, even though
forged, was a Joint Venture indebtedness, because the Joint Venture adopted or ratified the act
of executing the note in its name. See Reece v. First State Bank, 566 S.W.2d 296, 298 (Tex.
1978) (unconditional guarantor was liable on forged note that was shown to be corporate
indebtedness through ratification). Massey did not expressly guaranty the note subject to this suit;
he guaranteed the Joint Venture's corporate indebtedness in general. Therefore, FDIC had to
show either that the signature was authorized or that the note became a Joint Venture indebtedness
through adoption or ratification.

 FDIC first argues that it showed as a matter of law that Webb's signature on the
note was authorized. The variable rate promissory note is a negotiable instrument governed by
the Texas Uniform Commercial Code. Amberboy v. Societe de Banque Privee, 831 S.W.2d 793,
797 (Tex. 1992). FDIC argues that it was aided by the presumption of section 3.307, which
governs the burden of establishing signatures and the right to recover on an instrument. Tex. Bus.
& Com. Code Ann. § 3.307 (West 1968). Section 3.307 provides: 



(a) Unless specifically denied in the pleadings each signature on an instrument
is admitted. When the effectiveness of a signature is put in issue


 (1) the burden of establishing it is on the party claiming under the
signature; but


 (2) the signature is presumed to be genuine or authorized except
where the action is to enforce the obligation of a purported signer
who has died or become incompetent before proof is required.


(b) When signatures are admitted or established, production of the instrument
entitles a holder to recover on it unless the defendant establishes a defense.


* * * *



Under subsection (a)(1), when the defendant challenges a signature's effectiveness, the plaintiff
bears the burden of establishing the signature's authority. Yet subsection (a)(2) aids the plaintiff
by providing a presumption. Comment one to section 3.307 explains this presumption: "It means
that until some evidence is introduced which would support a finding that the signature is forged
or unauthorized the plaintiff is not required to prove that it is authentic. . . . He [the defendant]
is therefore required to make some sufficient showing of the grounds for his denial before the
plaintiff is put to his proof." Tex. Bus. & Com. Code Ann. § 3.307 cmt. 1 (West 1968). 

 Massey put the effectiveness of Webb's signature on the note in issue by
specifically denying there was a valid debt created by the Joint Venture because Webb was not
a joint venturer. (8) While Massey challenged the effectiveness of this signature, FDIC contends that
Massey introduced no evidence to establish Webb's lack of authority to bind the Joint Venture. 
FDIC argues that the presumption therefore remained undisturbed and the trial court as trier of
fact was required to find that the note was a binding Joint Venture obligation. See Tex. Bus. &
Com. Code Ann. § 1.201(31) (West 1968) ("presumption" means that trier of fact must find
existence of the fact presumed unless and until evidence is introduced which would support a
finding of its non-existence). We disagree.

 On cross-examination, Massey elicited testimony from O'Neal, FDIC's custodian
of records, to support his contention that Webb lacked authority to sign the note. O'Neal agreed
there was no description underneath Webb's signature on the note indicating any position or title
he held, nor any explanation on the note indicating Webb's connection with the Joint Venture. 
O'Neal also agreed that Webb did not appear as a joint venturer on any of the documents he
testified about. He stated he did not know who the members of the joint venture were.

 Although this evidence was produced on cross-examination, we believe this
testimony sufficiently rebutted the presumption of section 3.307. See Tex. Bus. & Com. Code
Ann. § 3.307 cmt. 1 (defendant's evidence "need not be sufficient to require a directed verdict
in his favor, but it must be enough to support his denial by permitting a finding in his favor.") 
To hold otherwise would effectively place the burden on Massey to prove the signature's
authority. Once this presumption was rebutted, FDIC made no showing of who the members of
the Joint Venture were nor called any witnesses to demonstrate that Webb was authorized to sign
on behalf of the Joint Venture. Therefore, FDIC failed to prove that Webb had authority to bind
the Joint Venture by factually or legally sufficient evidence. We overrule points of error four and
eleven.

 FDIC next argues that it offered evidence of the note's ratification. O'Neal testified
that two payments were made on the note. If believed by the trier of fact, ratification of the note
would make the primary party guarantor liable because the note would become a Joint Venture
obligation. See Reece, 566 S.W.2d at 298; Tex. Bus. & Com. Code Ann. § 3.404(a) (West 1968)
("any unauthorized signature is wholly inoperative as that of a person whose name is signed unless
he ratifies it or is precluded from denying it").

 The trial court was obviously unpersuaded by O'Neal's testimony because it failed
to find that the note represented a valid obligation of the Joint Venture. By this finding, we may
presume that the trial court impliedly failed to find a Joint Venture ratification. See Tex. R. Civ.
P. 299. We must therefore determine whether O'Neal's testimony concerning the two payments
on the note conclusively established ratification as a matter of law. We conclude that it did not.

 When O'Neal testified, he was an employee for FDIC. He was therefore an
interested witness. Lawrence v. TD Indus., 730 S.W.2d 843, 844 (Tex. App.--Dallas 1987, writ
ref'd n.r.e); Cf. Nutchey v. Three R's Trucking Co., 674 S.W.2d 928, 930 (Tex. App.--Amarillo
1984, writ ref'd n.r.e.) (witness not interested because not an employee at time of deposition
testimony). The uncontradicted testimony of an interested witness can do no more than raise a
fact issue unless the testimony is clear, direct, and positive, and no circumstances in evidence tend
to discredit or impeach such testimony. McGalliard v. Kuhlmann, 722 S.W.2d 694, 697 (Tex.
1986) (citing Anchor Casualty Co. v. Bowers, 393 S.W.2d 168, 169 (Tex. 1965)).

 In this case, there were circumstances in evidence tending to discredit or impeach
O'Neal's testimony. O'Neal did not testify who made the payments on the note; the two dates
given were before the bank went into receivership; and there was no testimony as to any specific
benefits the Joint Venture received. Moreover, O'Neal's testimony had to be refreshed by a
payment history document not admitted into evidence. Earlier in trial, Massey had taken O'Neal
on voir dire to question him about his knowledge of the bank's documents. O'Neal agreed that
he had never reviewed or observed the bank's preparation of the documents when the bank was
operating. He also admitted that he did not have personal knowledge as to how the records were
entered at that time and could not swear that the records were true and correct at the time they
were entered. The trial court reasonably could have concluded that O'Neal did not have personal
knowledge of any payments made to the bank before its receivership. On a defendant's motion
for judgment after the plaintiff rests, the trial court has the power to decide not only whether the
evidence presented raises a fact issue, but also to make a determination on the merits. See Qantel,
761 S.W.2d at 306 (Gonzalez, J., concurring).

 Alternatively, FDIC argues that it established its right to recover under the note
because it secured a default judgment against the Joint Venture. Once this default judgment was
severed from the original case, FDIC argues that Massey was collaterally estopped from
challenging the validity of the underlying debt. We disagree.

 Where a guarantor has notice of the action against his principal and he takes part
in the suit, he is not bound by the adjudication of the principal's liability by a default judgment
against his principal in the same action. Mayfield v. Hicks, 575 S.W.2d 571, 574 (Tex. Civ.
App.--Dallas 1978, writ ref'd n.r.e); see Trinity Universal Ins. Co. v. Briarcrest, 831 S.W.2d 453,
456 (Tex. App.--Houston [14th Dist.] 1992, writ denied).

 Moreover, the doctrine of collateral estoppel precludes relitigation of any ultimate
issue of fact actually litigated and essential to the judgment in a prior suit. Tarter v. Metropolitan
Sav. & Loan Ass'n., 744 S.W.2d 926, 927 (Tex. 1988). Under the Second Restatement of
Judgments, no issues are actually litigated in the case of a judgment rendered by default unless
the parties have entered into an agreement manifesting such an intention. Restatement (Second)
of Judgments § 27 cmt e (1982). Because FDIC failed to establish a Joint Venture indebtedness
through either ratification or collateral estoppel, we overrule points of error one, six, twelve, and
fourteen.

 In its thirteenth point of error, FDIC argues that it presented a prima facie case
against Massey because, as a matter of law, all of his pleaded defenses were barred by the
D'Oench Duhme doctrine and the federal holder in due course doctrine. See D'Oench Duhme &
Co. v. Federal Deposit Ins. Corp., 315 U.S. 447 (1942); 12 U.S.C. 1823(e) (1990); Federal Sav.
& Loan Ins. Corp. v. Murray, 853 F.2d 1251 (5th Cir. 1988). However, Massey's defense that
Webb's signature was unauthorized goes to the validity of the note itself. An unauthorized
signature is a real defense, even against a holder in due course. See Tex. Bus. & Com. Code
Ann. § 3.404(a) (unauthorized signature is wholly inoperative as that of the person whose name
is signed); NCNB Texas Nat'l Bank v. Campise, 788 S.W.2d 115, 118 (Tex. App.--Houston [14th
Dist.] 1990, writ denied) (forgery among real defenses against holder in due course); 6 Ronald
A. Anderson, Uniform Commercial Code § 3-305:119, at 102; §3-404:4(a), at 329 (1993 ed.)
(forgery and unauthorized signature are defenses good against holder in due course). Because the
trial court failed to find that the signature was authorized, this defense is good against FDIC. 
Therefore, any other defenses alleged by Massey that may have been barred by the federal holder
in due course doctrine or the D'Oench Duhme doctrine are irrelevant. We overrule FDIC's
thirteenth point of error. 

 In its ninth and tenth points of error, FDIC argues that it established as a matter
of law that it was the holder and owner of the note and guaranty. We disagree and hold that the
trial court did not err in failing to find holder and owner status for FDIC. We note that this
failure to find holder and owner status supports judgment for WGI as well as for Massey.

 To be a holder requires both possession and the necessary indorsements. See Tex.
Bus. & Com. Code Ann. § 1.201(20) (West Supp. 1994). The burden to establish this holder
status is on FDIC. See Jernigan v. Bank One, Texas, N.A., 803 S.W.2d 774, 775 (Tex.
App.--Houston [14th Dist.] 1991, no writ). No presumption aids this burden, and the trial court,
as trier of fact, was unpersuaded by FDIC's evidence on this issue. 

 The note admitted into evidence did not contain the necessary indorsements. There
was no indorsement on the note from the insolvent bank to FDIC in its receivership capacity. 
While the note did contain an indorsement from FDIC in its receivership capacity to FDIC in its
corporate capacity, this newly obtained indorsement was not provided to Massey during
discovery. Massey objected to the note's admission on this ground.

 As with the guaranty, FDIC conceded at trial that the indorsement had not been
provided in discovery. No showing of good cause was made; FDIC merely stated that there was
nothing really "key" about the new indorsement, such as reflecting any kind of change from the
insolvent bank to FDIC. Failing to supplement discovery to provide a new indorsement appears
more problematic than failing to provide the back page of a guaranty because an indorsement
provides the links in the chain of ownership. We believe that failure to supplement the new
indorsement to the note would be misleading to Massey in his preparation for trial. In such a
case, exclusion of evidence under a duty to be supplemented is automatic. See Tex. R. Civ. P.
215(5); 166b(6)(a)(2); Alvarado, 830 S.W.2d at 914. Therefore, we will not consider the
indorsement in our review of the evidence. (9) See James, 836 S.W.2d at 244 (appellate court
excluded improperly admitted evidence, including videotape that was not provided in discovery,
from sufficiency review). As such, the note contained none of its necessary indorsements. 

 As other evidence establishing holder and owner status, FDIC provided the
testimony of O'Neal who testified that he participated in the actual closing of the Lake Austin
National Bank and inventoried specific areas of the bank. He identified the promissory note and
stated that it was kept in the records of FDIC. He stated that FDIC was the owner and holder of
the note. He identified the document appointing FDIC as receiver of the bank and the purchase
and assumption agreement in which FDIC sold certain assets of Lake Austin National Bank to an
assuming bank and transferred the remaining assets to FDIC in its corporate capacity.

 As discussed earlier, O'Neal is an interested witness whose testimony can do no
more than raise a fact issue if circumstances in evidence tend to discredit or impeach his
testimony. McGalliard, 722 S.W.2d at 697. Such circumstances were before the trial court. 
Based on the reviewable evidence, FDIC lacked the necessary indorsements to the note. 
Furthermore, on cross-examination, O'Neal admitted that the purchase and assumption agreement
was the only record which reflected the transfer of assets to FDIC in its corporate capacity. He
also agreed that the purchase and assumption agreement did not state which assets went to the
assuming bank and which went to FDIC in its corporate capacity. O'Neal instead based his belief
of holder and owner status on FDIC's possession of the note. When asked if mistakes were
sometimes made in which FDIC held some documents belonging to the assuming bank, O'Neal
stated that he did not know personally of any mistakes but assumed they could be made. 

 In light of the evidence, we conclude that the trial court did not err in failing to find
FDIC as the holder and owner of the note. The lack of the necessary indorsements under the
reviewable evidence and Massey's cross-examination of O'Neal raised the question of whether
the assuming bank, rather than FDIC, might actually have acquired the note. Moreover, the
purchase and assumption agreement did not specify what assets went to which entity. As trier of
fact, the trial court had the power to weigh the evidence, draw inferences, and to believe or
disbelieve all or part of the evidence. Qantel, 761 S.W.2d at 306 (Gonzalez, J., concurring). 
From the evidence, the trial court reasonably could conclude there was a real question about who
actually acquired the note under the purchase and assumption agreement. (10) In reviewing
FDIC's legal sufficiency challenge to owner and holder status, we hold that FDIC failed to
conclusively establish that it was a holder and owner of the note. We overrule the ninth and tenth
points of error.





A. WGI

 FDIC alleged that WGI was liable for the note as a member of the Joint Venture. 
See Truly v. Austin, 744 S.W.2d 934, 937 (Tex. 1988) (members of a joint venture are jointly and
severally liable on joint venture debts and obligations). Having failed to establish holder and
owner status of the note, FDIC did not establish its right to recover against WGI as well. 
Moreover, WGI's name did not appear on the note. Therefore, unless it was shown that WGI was
a joint venturer, WGI would not be liable on the note. See Tex. Bus. & Com. Code Ann.
§ 3.401(a) (West 1968) (no person is liable on an instrument unless his signature appears on that
instrument). However, in this case, FDIC did not offer evidence of who were the members of
the Joint Venture. The trial court made this specific fact finding, and because FDIC does not
challenge this finding, it is binding on appeal. Heald v. Texas Real Estate Recovery Fund, 669
S.W.2d 179, 181 (Tex. App.--Fort Worth 1984, no writ); Katz v. Rodriguez, 563 S.W.2d 627,
631 (Tex. Civ. App.--Corpus Christi 1978, writ ref'd n.r.e.). We therefore overrule FDIC's
points of error three and five as they relate to recovery against WGI.





CONCLUSION


 The trial court did not err in failing to find the essential elements for FDIC's cause
of action. Accordingly, we affirm the trial court judgment. 



 

 Jimmy Carroll, Chief Justice

Before Chief Justice Carroll, Justices Aboussie and B. A. Smith


Affirmed


Filed: August 17, 1994


Do Not Publish
1.   In its original petition, FDIC named, among others, Westminster Glen Joint
Venture and Westminster Glen, Inc. as defendants. Subsequently, the trial court
rendered an interlocutory default judgment against Westminster Glen Joint Venture and
severed the claims against it from the main cause, trial court cause number 448,169. 
Nevertheless, the final judgment rendered in that cause orders that the FDIC take nothing
on its claims against Westminster Glen Joint Venture, Inc. and not Westminster Glen, Inc.,
the entity that remained in cause number 448,169. The judgment does, however, have a
"Mother Hubbard" clause that disposes of any claims not expressly disposed of in the
judgment. See North E. Indep. Sch. Dist. v. Aldridge, 400 S.W.2d 893, 897-98 (Tex. 1966).
2.   Webb was originally a party to this appeal. However, this Court granted FDIC's
motion to dismiss its appeal against Webb after his debts were discharged in bankruptcy. 
We therefore do not address point of error seven, which relates solely to Webb's
guaranty. 
3.   We note that WGI was represented by Webb's attorney and did not submit an
appellee's brief.
4.   FDIC raised this challenge to the holder and owner status in points of error nine
and ten. These points raise only a legal sufficiency challenge to holder and owner status.
5.   FDIC specifically raises this challenge in points of error two, four, six, and eleven. 
FDIC also groups these points together with points of error one, twelve, and fourteen,
arguing more generally that the FDIC established its right to recover under the note and
guaranty, and raising a factual sufficiency challenge under this category.
6.   FDIC raises this challenge in point of error eight.
7.   FDIC only raised a legal sufficiency challenge to the owner and holder issue.
8.   By failing to deny that Webb's signature was genuine, the genuineness was
admitted. However, challenging the signature's authority has the same effect as arguing
that it was forged. See Tex. Bus. & Com. Code Ann. § 3.404(a) (West 1968). We therefore
do not reach point of error number two.
9.   We recognize that this discovery problem presents itself in an unusual procedural
posture: Massey, the appellee, objected to the admission of the note on the basis of
failure to respond to discovery. The objection was overruled by the trial court and the
note was admitted; the trial court, however, ultimately rendered judgment for Massey,
the party it ruled against in admitting the note. We also recognize that the record does
not contain the discovery requests and responses. We rely, however, on FDIC's
statements in the record at trial, concerning its failure to provide the newly obtained
endorsement.
10.  See Resolution Trust Corp. v. Camp, 965 F.2d 25, 29 n.1 (5th Cir. 1992) (in earlier
case, summary judgment was reversed because there was evidence in the record that FDIC
conveyed certain assets to another bank in assumption agreement and conveyed other assets to
FDIC-corporate pursuant to a contract of sale); Federal Deposit Insur. Corp. v. McCrary, 977
F.2d 192, 195 (5th Cir. 1992) (reversing summary judgment for FDIC where contract of sale
failed to list which assets were transferred to what entity); Jernigan, 803 S.W.2d at 776-77;
but see Marshall, 939 F.2d at 278 (rejecting argument that RTC is not a holder of note
because it lacked necessary endorsements under the Texas Uniform Commercial Code).